**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BILLIE ELLIOTT,

      Plaintiff - Appellant,

v.

WILLIAM L. CUMMINGS, Deputy
Secretary, Kansas Department of
Corrections; DAVID R. MCKUNE,
Warden, Kansas Department of
Corrections; PAM GREEN, Mailroom
Supervisor, Kansas Department of
Corrections; TABOR MEDILL,
Administrative Assistant, Kansas
Department of Corrections; MICHAEL
DAVID, Administrative Assistant, Kansas
Department of Corrections; DUANE
MUCKENTHALER, CM I, Kansas
Department of Corrections; (FNU)
(LNU), Officer D.M., Mailroom Officer,
Kansas Department of Corrections,

      Defendants - Appellees.

No. 01-3317
(D.C. No. 00-CV-3309-GTV)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Pro se plaintiff Billie Elliott, an inmate at the Lansing Correctional Facility in Lansing, Kansas, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint. We exercise jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand this matter to the district court for further proceedings.

## I.    Background

Under Kan. Admin. Regs. 44-12-601(q)(3), prison officials at the Lansing Correctional Facility are required to censor, and not permit into the facility, all publications mailed to inmates which contain obscenity. Kan. Admin. Regs. 44-12-313(b) defines "obscenity" as follows:

> Any material is obscene if the average person applying contemporary community standards would find that the material, taken as a whole: (1) appeals to the prurient interest; (2) has patently offensive representations or descriptions of (A) ultimate sex acts, normal or perverted, actual or simulated, including sexual intercourse or sodomy; or (B) masturbation, excretory functions, sadomasochistic abuse, or lewd exhibition of the genitals; and (3) would not be considered by a reasonable person to have serious literary, educational, artistic, political, or scientific value.

This definition is in accordance with the definition of obscenity articulated by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 24-25 (1973).

As we understand his complaint, plaintiff is not challenging the prison officials'

authority to censor and exclude obscene materials from the prison.  Instead, plaintiff

alleges that defendants have acted in an arbitrary and capricious manner in censoring non-

obscene publications and correspondence that were mailed to him at the prison; that

defendants have seized publications and correspondence without promptly notifying him

of the decisions to withhold the materials from him; that defendants have converted his

publications and correspondence for their own personal use; and that defendants have

treated him differently from other inmates because other inmates have been permitted to

receive the same or similar types of non-obscene pornographic materials.  Plaintiff alleges

that defendants have thereby violated his rights under the First and Fourteenth

Amendments; he seeks to recover damages and has requested both declaratory and

injunctive relief.

In support of the allegations in his complaint, and as evidence that he has

exhausted all available administrative remedies, plaintiff attached documentation to his

complaint which shows the following:

> 1.  On September 30, 1999, plaintiff submitted grievance No. AA20000209, complaining that employees in the prison's mail room had seized and censored his copy of the December 1999 issue of *Hawk* magazine.  Plaintiff claimed that the issue was not obscene and should not have been censored since it did not contain any photographs showing sexual penetration.  He further claimed on appeal that another inmate at the prison had been permitted to receive a copy of the issue.  On appeal to the Secretary of Corrections, a designee of the secretary determined that it was not necessary to take any action on plaintiff's grievance because the warden's office had advised that plaintiff was permitted to receive the issue.

2. On October 11, 1999, plaintiff submitted grievance No. AA20000254, complaining that employees in the prison's mail room had seized and censored his copy of the December 1999 issue of *Hawk* magazine. On appeal to the Secretary of Corrections, a designee of the secretary determined that it was not necessary to take any action on plaintiff's grievance because the issue was not being censored.

3. On October 28, 1999, plaintiff submitted a property damage claim, No. AA0105772, seeking to recover the $10.00 cost of the December 1999 issue of *Hawk* magazine. On appeal to the Department of Corrections, a designee of the department recommended disapproval of the claim because the issue had been approved and there was no proof it had not been sent to plaintiff.

4. On February 7, 2000, plaintiff submitted grievance No. AA20000599, complaining that employees in the prison's mail room had seized and censored his copy of the April 2000 issue of *Hawk* magazine and thereby violated his rights under the First Amendment. On appeal to the Secretary of Corrections, a designee of the secretary determined that the issue contained photographs depicting full sexual penetration and was properly censored as containing obscenity.

5. On February 28, 2000, plaintiff submitted grievance No. AA20000671, complaining that employees in the prison's mail room had seized and censored his copy of the May 2000 issue of *Hawk* magazine and thereby violated his rights under federal law. On appeal to the Secretary of Corrections, a designee of the secretary determined that the issue contained photographs depicting oral sexual penetration and bodily fluids and was properly censored as containing obscenity.

6. In March 2000, plaintiff submitted grievance No. AA20000713, complaining that he had ordered a back issue of the December 1999 issue of *Hawk* magazine and been permitted to receive the back issue, but his copy of the back issue was subsequently confiscated by a prison official. On appeal to the Secretary of Corrections, a designee of the secretary determined that the back issue was properly confiscated because it contained obscenity in the form of photographs depicting simulated sexual activity and discharged sexual fluids, and the prior determination that plaintiff was permitted to receive the issue was in error. (On March 14, 2000, plaintiff submitted a similar grievance regarding the confiscation of

the back issue, No. AA0000723, and it was resolved on the same grounds as grievance No. AA0000713.)

7.  On March 10, 2000, plaintiff submitted grievance No. AA20000724, complaining that he had received a censor notice informing him that he could no longer receive pen pal correspondence from an individual in Pennsylvania and that a letter from the individual had been seized.  On appeal to the Secretary of Corrections, a designee of the secretary determined that the prison did not have a per se ban on pen pal correspondence and that the letter had been improperly seized.

8.  On May 19, 2000, plaintiff submitted grievance No. AA20000942, complaining that employees in the prison's mail room had, without providing any prior notice to him, seized letters and photographs sent to him from a woman in Rhode Island and returned the letters and photographs to her.  Plaintiff claimed the photographs were of women in panties or swimsuits and that none of the photographs contained pictures depicting sexual penetration or bodily fluids.  On appeal to the Secretary of Corrections, a designee of the secretary determined that no further action was necessary because a prison official had advised that the mail room had not censored any of plaintiff's mail and returned it to the sender and plaintiff had failed to show that this was incorrect.

9.  On May 19, 2000, plaintiff submitted grievance No. AA20000943, complaining that he had not received his copy of the August 2000 issue of *Hawk* magazine or a censor notice regarding the issue.  The basis of plaintiff's grievance is unclear, however, because he did not claim that the employees had thereby violated his rights under federal law or the governing state regulations regarding obscenity.  On appeal to the Secretary of Corrections, a designee of the secretary determined that the issue was properly seized and censored because it contained photographs depicting oral sexual penetration and bodily fluids resulting from sexual activity and was properly censored as containing obscenity.

10.  Plaintiff filed property damage claims with the Joint Committee on Special Claims against the State, Nos. 4781 and 4859, seeking to recover the cost of the initial and backup issues of the December 1999 issue of *Hawk* magazine.  In June 2000, the committee denied the claims.

(In addition to the grievances summarized above, plaintiff also attached copies of a number of other grievances to his complaint. We need not address the additional grievances, however, because they do not pertain to any of the claims asserted in plaintiff's complaint.)

In September 2001 the district court entered a sua sponte order dismissing plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B). (Section 1915 applied to the district court proceedings because the court granted plaintiff's motion for leave to proceed in forma pauperis.) First, under § 1915(e)(2)(B)(i), the court found that plaintiff's First Amendment claims were frivolous. The court based its frivolousness determination on its review of the documents attached to plaintiff's complaint. According to the court, "[t]he grievance responses show adequate and reasonable bases for the decision to censor the materials in question under the standards set out in [Kan. Admin. Regs.] 44-12-313, and the complaint and attachments provide no support for arbitrary and capricious rule-making."

Second, with respect to plaintiff's claim that defendants converted his magazines for their own personal use, the court found that the claim was "wholly unsupported," and thus frivolous under § 1915(e)(2)(B)(i). According to the court, "[t]he record suggests only that defendants retained the material to inspect its contents. Such a review is necessary to apply the [obscenity] standards set forth in the state regulations."

Third, with respect to plaintiff's claim that defendants seized publications and correspondence without promptly notifying him of the decisions to withhold the materials from him, the court found that plaintiff failed to exhaust fully his notice claim in the prison grievance proceedings. Thus, the court determined that the claim was barred by 42 U.S.C. § 1997e(a).

Finally, in accordance with § 1915(e)(2)(B)(ii), the court found that plaintiff had failed to state an equal protection violation. According to the court, "the record suggests only that a single issue of a magazine confiscated from plaintiff's mail was delivered to another inmate and that plaintiff successfully challenged a single instance of the withholding of pen pal correspondence . . . . [T]he court finds the limited nature of the alleged inequality is simply insufficient to support a claim of purposeful discrimination."

## II.    Analysis

### 1.  First Amendment Claims

We review the district court's dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) for an abuse of discretion. *See McWilliams v. Colorado*, 121 F.3d 573, 574-75 (10th Cir. 1997); *but see Basham v. Uphoff*, No. 98-8013, 1998 WL 847689, at *4 n.2 (10th Cir. Dec. 8, 1998) (unpublished) (questioning whether de novo standard of review should apply to dismissals under § 1915(e)(2)(B)(i) in light of the changes to the statute under the Prison Litigation Reform Act of 1995); *Lowe v. Sockey*, No. 00-7109, 2002 WL 491731, at **2 (10th Cir. Apr. 2, 2002) (unpublished) (same). The standard of review is not

determinative of this appeal, however, because we reach the same conclusions under either the de novo or the abuse-of-discretion standard of review.

Under § 1915(e)(2)(B)(i), district courts have the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (construing former § 1915(d)). Nonetheless, a district court may not dismiss a complaint as frivolous "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

> In other words, the . . . frivolousness determination, frequently made *sua sponte* before the defendant has even been asked to file an answer, cannot serve as a factfinding process for the resolution of disputed facts[,] . . . [and] a court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]

*Id.* at 32-33 (internal quotation marks and citations omitted).

Despite these limitations, we agree with the district court that plaintiff's First Amendment claims concerning the April, May, and August 2000 issues of *Hawk* magazine are frivolous. The documentation of the administrative proceedings regarding these issues reflects that the prison authorities censored them because they contained material meeting the applicable definition of obscenity. Although plaintiff made vague and conclusory references to alleged violations of the First Amendment and federal law in the grievances he filed concerning the April and May 2000 issues, he never challenged, or

even addressed, the prison authorities' obscenity findings with respect to the April, May, and August 2000 issues, nor does he challenge them in his complaint. Accordingly, we affirm the dismissal of plaintiff's First Amendment claims with respect to the April, May, and August 2000 issues of *Hawk* magazine.

We also agree with the district court that plaintiff's First Amendment claim concerning the December 1999 issue of *Hawk* magazine is frivolous. While the administrative history of what happened to the December 1999 issue is somewhat long and tortured, the prison authorities ultimately determined that it too was properly censored as obscene under the applicable regulations. Specifically, the prison authorities determined it contained obscene materials including "photographs depicting simulated sexual activity and discharged sexual fluids" that qualified as obscenity under the applicable regulations. *See* grievance No. AA20000713 at 10. Although plaintiff has persistently asserted that the December 1999 issue should not have been censored because it failed to show "sexual penetration," he has never disputed the prison authorities' determination that the issue contained other types of obscenity. We therefore conclude that plaintiff's First Amendment claim with respect to the December 1999 issue of *Hawk* magazine was properly dismissed as frivolous.

We disagree, however, with the district court's determination with respect to plaintiff's First Amendment claim concerning the letters and photographs that he alleges were sent to him from the woman in Rhode Island. On the present record, there is a

factual dispute concerning whether employees in the prison's mail room censored the letters and photographs and returned them to the sender. Thus, we must reverse the dismissal of this aspect of plaintiff's First Amendment claim.

The district court also read plaintiff's complaint as alleging an additional First Amendment violation—that defendants interfered with his mail by applying arbitrary and capricious rules which exceeded their authority under the governing state regulations. The district court ruled that this claim was unexhausted because plaintiff failed to assert it in the grievances he filed with prison officials. To the extent that the arbitrary-and-capricious allegation raises a new claim, we agree with the district court. As we read the complaint, however, this allegation is merely a paraphrase of the contention that the prison officials failed to comply with governing obscenity regulations. In any event, even if our understanding is correct, we need not further address the arbitrary-and-capricious allegation, because it does not raise a claim independent of the claims already discussed in this opinion.

2. Conversion Claim

The district court concluded that plaintiff's conversion claim was frivolous because "[t]he record suggests only that defendants retained the material to inspect its contents." Yet the record before this court does not show what the prison officials did with the materials they seized or what ultimately happened to the materials. Accordingly, we must reverse the dismissal of plaintiff's conversion claim.

-10-

In reversing the dismissal of plaintiff's conversion claim, we intend no comment on the issue of whether the claim is even cognizable under 42 U.S.C. § 1983, an issue the district court did not address. Likewise, assuming the conversion claim is based on state law, we express no opinion as to whether the district court must or may exercise supplemental jurisdiction over the claim under 28 U.S.C. § 1367.

3. Procedural Due Process Claim

In grievances Nos. AA20000942 and AA20000943, plaintiff claimed the prison officials failed to notify him that they were going to destroy or return a publication and letters with photographs that had been mailed to him at the prison. The record does not refute these claims. Plaintiff is apparently contending that, as a matter of procedural due process, he should have had the opportunity to request a hearing, or some other comparable remedy, before the items were destroyed or returned.

The district court dismissed plaintiff's procedural due process claim under 28 U.S.C. § 1997e(a), finding that he had failed to exhaust the claim fully in the prison grievance proceedings. We review de novo a dismissal for failure to exhaust administrative remedies. *Miller v. Menghini*, 213 F.3d 1244, 1246 (10th Cir. 2000), *overruled on other grounds by Booth v. Churner*, 532 U.S. 731 (2001). Our review of the record reveals that plaintiff specifically raised the lack-of-notice issue in his initial prison grievances and in his appeals of the denials of the grievances. *See* grievances

Nos. AA20000942 at 2, 7 and AA20000943 at 1, 5.  Thus, we must reverse the dismissal

of plaintiff's procedural due process claim.

4.  Equal Protection Claim

In his complaint, plaintiff alleges that defendants have treated him disparately by

allowing other inmates to receive and keep certain publications and pen pal

correspondence, while at the same time censoring the same or similar materials when they

were sent to him.  The district court dismissed plaintiff's equal protection claim under

§ 1915(e)(2)(B)(ii) for failure to state a claim.

> We review de novo the district court's decision to dismiss a [claim]
> under § 1915(e)(2)(B)(ii) for failure to state a claim.  Dismissal of a pro se
> complaint for failure to state a claim is proper only where it is obvious that
> the plaintiff cannot prevail on the facts he has alleged and it would be futile
> to give him an opportunity to amend.  In determining whether a dismissal is
> proper, we must accept the allegations of the complaint as true and construe
> those allegations, and any reasonable inferences that might be drawn from
> them, in the light most favorable to the plaintiff.  In addition, we must
> construe a pro se appellant's complaint liberally.

*Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002) (internal quotation marks and

citations omitted).

The Supreme Court has "recognized successful equal protection claims brought by

a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated

differently from others similarly situated and that there is no rational basis for the

difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per

curiam).  Plaintiff, however, has failed to allege that the difference in treatment was

-12-

intentional. Given our liberal construction of pro se pleadings, we might overlook this failure as mere inartful pleading. But, as the district court noted, plaintiff's grievances do not "support a claim of purposeful discrimination." On the contrary, they suggest that the disparate treatment he allegedly received was the result of haphazard, arbitrary decision making, not wrongful intent directed at him personally. We therefore hold that plaintiff's equal protection claim was properly dismissed for failure to state a claim.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and this matter is REMANDED for further proceedings. The district court granted plaintiff's motion to proceed in forma pauperis on appeal, payable in partial payments. We remind plaintiff of his obligation to continue making partial payments until the entire fee is paid.

Entered for the Court

Harris L Hartz
Circuit Judge

**ANDERSON**, Circuit Judge, dissenting in part and concurring in part:

I write separately because, with one small exception, I believe that all of Elliott's complaint was properly dismissed by the district court, pursuant to 28 U.S.C. § 1915(e)(2)(B), as frivolous and/or for failure to state a claim.

First, the district court correctly determined that Elliott's entire First Amendment claim was frivolous. The majority agrees with that conclusion with respect to the issues of *Hawk* magazine.

The majority also concludes, however, that there is a factual dispute concerning whether employees in the prison's mail room censored and returned the letter and photographs that plaintiff alleges were sent to him by the woman in Rhode Island. In his grievance relating to this incident, Elliott alleged that the Rhode Island woman "normal[l]y sends me photos of women in panties or swimsuits." Grievance No. AA20000942. He further alleged that he had not received such pictures and attached a photocopy of a letter from the woman in which she stated that the "prison keep[s] send[ing] me [the photos]." *Id.* In their response to his grievance, prison authorities denied that they had returned any mail addressed to Elliott without following standard procedures.

Elliott's averments in his complaint regarding this grievance are extremely vague and conclusory—"Defendants failed to give Plaintiff a Notice of Mail Seizure or Censorship when rejecting Plaintiff's pen-pal letter(s), and then destroyed same and/or returning same to sender as unauthorized correspondence," Compl. ¶ 17; "some LCF

inmates are permitted to receive nude magazines while other inmates are prohibited from receiving the same magazines as well as personal mail from free-world individuals," *id.* ¶ 22; "Defendants at LCF have destroyed personal mail sent to Plaintiff by free-world individuals, without affording him a Notice of Mail Seizure/Censorship, that is required by law," *id.* ¶ 24; "The actions of the Defendants . . . have . . . caused Plaintiff to have publications destroyed as well as personal incoming letters without Notice of Mail Seizure/Censorship," *id.* ¶ 29; "The actions of the Defendants . . . have deliberately destroyed his personal mail and/or returned same to sender as unauthorized correspondence, thereby holding Plaintiff incommunicado with free-world individuals," *id.* ¶ 38. Aside from these conclusory allegations, which are not only vague but generalized to the point of being meaningless for notice pleading purposes, the only actual information that Elliott provides supporting those allegations is a photocopy of a letter from the Rhode Island woman which he *did* in fact, evidently, receive in prison.

Thus, on the face of his complaint, Elliott's claims with respect to the letters and photographs are frivolous. He alleges, on the one hand, that he did in fact receive a letter from the woman in Rhode Island, but, on the other hand, he alleges that he did not receive from her some other unspecified letter and/or photos and he includes her averment that *all* her letters and/or photos were returned to her.

While I recognize that a pro se litigant's pleadings are to be read liberally and broadly—and, at this stage, taken as true if asserted with at least a modicum of reasonable

particularity—they nonetheless must contain something more than vague, conclusory, extremely generalized, or purely speculative assertions. *See Frazier v. DuBois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (to avoid dismissal for frivolousness pro se litigants must have some minimal level of factual support for claims); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that pro se plaintiff's conclusory allegations without supporting factual averments are insufficient to state a claim for relief). I would conclude that Elliott's averments relating to his failure to receive photos from the woman in Rhode Island are properly dismissed as frivolous or for failure to state a claim.[1]

Additionally, the majority holds that the district court erred when it found Elliott's conversion claim frivolous because "'[t]he record suggests only that defendants retained the material to inspect its contents.'" Maj. Op. at 10 (quoting R., Doc. 5 at 9). The majority states that "the record before this court does not show what the prison officials did with the materials they seized or what ultimately happened to the materials." *Id.* However, it is pure speculation to even suggest that the defendants did anything other than simply retain the materials to inspect their contents. To infer any other motive or conduct from the simple fact that the materials were retained for inspection in accordance with applicable regulations is to attribute unlawful motives to prison authorities

---

[1]It is ironic, and harmful to his claim that, in support of his assertion that he failed to receive a letter or letters from a particular person, he attaches a copy of a letter he did receive from that very same person.

performing their duties, without anything even approaching a particularized factual allegation.

Moreover, Elliott's complaint styles his conversion claim as a violation of his federal constitutional rights, specifically his Fifth and Fourteenth Amendment rights. To the extent Elliott's claim is based on an alleged procedural due process violation, the Supreme Court "has held that neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim when the plaintiff has an adequate state remedy." *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Either the prison grievance procedures, which Elliott pursued, or a state law claim for conversion, which Elliott appears to pursue in this case or presumably could pursue, provides an adequate post-deprivation remedy, such that his federal constitutional claim is subject to dismissal. *See Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding "the plaintiff had an adequate post-deprivation remedy in the [prison] grievance program"); *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 536-37 (E.D. Pa. 2002) (same); *Feliciano v. Servicios Correcionales,* 79 F. Supp. 2d 31, 34-35 (D. Puerto Rico 2000). And, if this conversion claim is properly characterized as a state law claim, the district court may decide, in its discretion, to decline to exercise supplemental jurisdiction over it. *See United Int'l*

*Holdings, Inc. v. The Wharf (Holdings), Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001).[2]  I would therefore affirm the district court's dismissal of this claim as frivolous.

Finally, the single issue which I agree merits reversal is the district court's erroneous conclusion that Elliott failed to exhaust his procedural due process claim concerning an alleged failure to notify him before certain materials were destroyed or returned.  The record reveals that Elliott did pursue this claim through the prison's administrative process and it is, therefore, exhausted.  I would accordingly remand this case for the limited purpose of addressing Elliott's procedural due process claim.

---

[2]In dismissing Elliott's conversion claim as "legally frivolous" and "wholly unsupported," the district court implicitly declined to exercise supplemental jurisdiction over any state law claim contained in his conversion allegation.